```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**GAYLENE FRALEY,**

    **Plaintiff,**

**v.**                                       **CASE NO. 2:10-cv-00762**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## **M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") and disabled widows benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Gaylene Fraley (hereinafter referred to as "Claimant"), protectively filed an application for DIB on September 14, 2006, alleging disability as of August 18, 2006, due to high blood pressure, anxiety and depression. (Tr. at 14, 154-58, 228.) Claimant also filed a Title II application for disabled widow's benefits on September 14, 2006, alleging disability beginning August 18, 2006. (Tr. at 14, 162-64.) The claims were denied initially and upon reconsideration. (Tr. at 14, 82-86, 94-96.) Claimant requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. at 146.) The hearing was held on July 8, 2008, before the Honorable Michelle D. Cavadi. (Tr. at 47-77.) By decision dated July 31, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-28.) On March 26, 2010, the Appeals Council considered additional evidence offered by the Claimant[1], but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-6.) On May 21, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently

---

[1] In addition to the evidence noted below, the Appeals Council acknowledged that Claimant had been found disabled on a subsequent application effective February 1, 2009. Because this finding was based on a consultative examination dated February 13, 2009, showing that Claimant's condition had deteriorated, the Appeals Council found no reason to relate the onset date back further than February 1, 2009. (Tr. at 2.)

engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

For disabled widow's benefits, in addition to showing

disability, a claimant must show that she is a widow who has attained the age of fifty and is unmarried (unless one of the exceptions in 20 C.F.R. § 404.335(e) (2008) apply) and that her disability began before the end of the prescribed period. See 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later. 42 U.S.C. § 402(e)(4); 20 C.F.R. § 404.335(c)(1).[2]

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of residual left shoulder pain (status/post rotator cuff repair), anxiety and depression. (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 21.) As a result,

---

[2] In this case, Claimant's prescribed period began on November 3, 1999, the date her husband died. Thus, Claimant had to establish that her disability began on or before November 30, 2006, in order to be entitled to disabled widow's benefits. (Def.'s Br. at 12 n.7.)

Claimant cannot return to her past relevant work. (Tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as product hand packer, night guard, file clerk, machine tender and product inspector, which exist in significant numbers in the national economy. (Tr. at 27.) On this basis, benefits were denied. (Tr. at 28.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was fifty-eight years old at the time of the administrative hearing. (Tr. at 52.) Claimant graduated from high school and has a phlebotomy certificate. (Tr. at 53-54.) In the past, she worked as a technician building eye implants and as a manager at a fast food restaurant. (Tr. at 54-56.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

<u>Evidence before the ALJ</u>

The record includes treatment notes from New Hope Christian Counseling Center, dated October 12, 2006, through January 18, 2007. (Tr. at 299-304.)

On August 21, 2006, Thomas E. Dannals, M.D. saw Claimant for a six month follow up. Claimant had a history of hypertension and anxiety. Claimant had been off work for the last week because of "nerves." (Tr. at 307.) He assessed Claimant with hypertension, stable, and anxiety and depression. (Tr. at 307.)

The record includes additional treatment notes from New Hope Christian Counseling Center, Inc. dated November 17, 2005, through October 27, 2006. Claimant was treated by Melissa D. Martin, M.A., L.P.C. and others. (Tr. at 314-30.)

6

On November 9, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no limitations. (Tr. at 331-38.)

On November 13, 2006, a State agency medical source completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to travel in unfamiliar places or use public transportation. (Tr. at 340-41.) The source opined that "Claimant's functional capacity limitations do not exceed moderate and do not call for a[n] RFC allowance. Claimant has the mental/emotional capacity for routine/repetitive activity in a low stress/demand work environment that has a minimal interpersonal/social requirement." (Tr. at 342.)

On November 13, 2006, the same State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had severe depression and anxiety and, as a result, had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties

in maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 344-56.)

On January 2, 2007, Claimant injured her left shoulder, head and neck. A non-enhanced head CT scan was negative. (Tr. at 359-60.) X-rays of the shoulder were negative. (Tr. at 362.) She was diagnosed with minor head injury, neck strain and left shoulder contusion. (Tr. at 361.)

The record includes treatment notes from Bill P. May, D.P.M. dated July 23, 2003, through January 9, 2007. (Tr. at 366-71.) On December 7, 2006, Claimant sprained her left foot. (Tr. at 366.)

The record includes additional treatment notes from Dr. Dannals dated December 14, 2006, and January 15, 2007. On December 14, 2006, Claimant complained of bone pain following an injury to her left foot. The assessment was bone pain in the foot and depression. (Tr. at 377.) On January 15, 2007, Claimant complained of neck pain following a shoulder and head injury. The assessment was cervicalgia. (Tr. at 376.)

The record includes treatment notes from Huntington Physical Therapy, Inc. dated January 16, 2007, through February 2, 2007, for neck and shoulder pain. (Tr. at 382-89.)

The record includes additional treatment notes from Dr. Dannals dated March 1, 2006, through February 5, 2007. (Tr. at 396-400.) On March 1, 2006, Claimant reported she was told her bone density was abnormal. (Tr. at 398.) On March 21, 2006, a

DEXA scan showed osteopenia, left hip. (Tr. at 399.) On February 5, 2007, Claimant reported pain in the left shoulder in the acromioclavicular joint when actively moved. The assessment was essential hypertension, working diagnosis of separation of the left shoulder and rotator cuff tendonitis. She was referred to an orthopedist. (Tr. at 397.)

On February 6, 2007, a State agency medical source affirmed the Physical Residual Functional Capacity Assessment of November 9, 2006. (Tr. at 403.)

On February 7, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had severe mental impairments that resulted in mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 404-17.)

The same State agency medical source completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 418-19.)

She opined that Claimant "may have the above limits in [functional capacity] associated [with] her mental condition. Her condition does not medically meet or functionally equal the listings. She is able to learn and perform work-like activities in a low stress environment [with] low production demands." (Tr. at 420.)

On March 2, 2007, Claimant underwent an MRI of her left shoulder with contrast, which showed a down-sloping acromion raising the possibility of lateral arch stenosis. Also there was evidence of a large full thickness tear involving the supraspinatus and infraspinatus tendons. (Tr. at 428.)

On March 13, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with a limited ability to reach in all directions due to a "very mild limitation [in the left shoulder]." (Tr. at 430-37.) In the additional comments section, the source notes Claimant's diagnosis of minor head injury, neck strain and left shoulder contusion on January 2, 2007. (Tr. at 437.)

The record includes additional treatment notes from Dr. Dannals dated February 27, 2007, through April 3, 2007. (Tr. at 440-45.) On February 27, 2007, Claimant reported that she fell onto her arm and had loss of range of motion. Claimant had physical therapy, which helped. She was diagnosed with rotator cuff, sprain, strain, tear. (Tr. at 444.) On April 3, 2007,

Claimant continued to complain of pain in the left shoulder. Dr. Dannals noted that an MRI showed a complete supraspinatus/infraspinatus tear with retraction beyond the midpoint of the humeral head. The diagnosis was rotator cuff sprain, strain, tear on the left. Surgery was recommended. (Tr. at 442.)

On March 16, 2007, Claimant underwent arthroscopic debridement of the glenohumeral joint with arthroscopic subacromial decompression and mini open rotator cuff repair. (Tr. at 446-47.)

On April 3, 2007, Dr. Dannals noted that Claimant was better. She was cautioned about doing too much. Dr. Dannals wrote that she "remains disabled from working." (Tr. at 440.)

The record includes additional treatment notes from Dr. Dannals, some of which are duplicates or predate Claimant's alleged onset of disability. (Tr. at 461-90.)

The record includes an additional treatment note from Dr. Dannals dated November 20, 2007. Claimant complained of dizziness. The assessment was labyrinthitis and essential hypertension. (Tr. at 510.)

On May 21, 2008, Ms. Martin completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which she opined that Claimant's abilities were fair to poor in almost all categories. (Tr. at 527-29.)

The record includes treatment notes from Jack Steel, M.D., who

11

performed Claimant's shoulder surgery. (Tr. at 544-67.) Following surgery, on April 3, 2007, Dr. Steel wrote that Claimant was disabled from working and that she had rotator cuff sprain/strain and impingement syndrome. She was to continue therapy and was cautioned from doing too much. (Tr. at 549.) On June 4, 2007, Dr. Steel wrote that Claimant was in the active assist phase of her rehab and was progressing well. He stated that "[w]e had to caution Ms. Fraley last week. She reported she could lift her arm up half way actively. We advised her she is not to perform this activity and to stop assessing this on her own at home." (Tr. at 548.) On June 5, 2007, Claimant was doing well. She was to continue therapy and progress to exercises and strengthening. She was to remain off work until her next appointment. (Tr. at 546.) On August 21, 2007, Dr. Steel noted that at five months post op, Claimant's condition had improved. Claimant was to remain disabled from work for another eight weeks and then Dr. Steel planned to release Claimant to return to work. (Tr. at 544.) On December 11, 2007, Claimant complained of burning type pain "when she's washing walls and painting." (Tr. at 541.) Claimant had full equal active range of motion. Claimant continued to do her exercises and was advised to do so through March. Dr. Steel advised Claimant "to take it easy and be cautious about hanging wallpaper, painting and washing walls." (Tr. at 541.)

The record includes additional treatment notes from Ms. Martin

and others at New Hope Christian Counseling Center dated July 18, 2007, through May 7, 2008. (Tr. at 570-78.)

The record includes an additional treatment note from Dr. Dannals dated June 3, 2008. Claimant saw Dr. Dannals for follow up related to her diabetes. Claimant reported feeling tired and having increased urinary frequency. Claimant reported "bilateral upper arm and shoulder discomfort from lifting grandchildren (twins) who are now 11 weeks old. She had no prior injury or arm discomfort. Her soreness has been x 2 months." (Tr. at 581.) Dr. Dannals' assessment was essential hypertension and diabetes mellitus. He prescribed glucophage. (Tr. at 581.)

The record includes an additional treatment note from New Hope Christian Counseling Center dated July 2, 2008. (Tr. at 586.)

Appeals Council

On August 5, 2008, Ms. Martin and David Humphreys, M.D. wrote that Claimant had been treated at New Hope Christian Counseling Center since November 17, 2005, with a diagnosis of major depressive disorder, recurrent, severe. On two occasions, Claimant was unable to work because of her condition, but was able to return to work after receiving treatment. In August of 2006, Claimant once again experienced psychiatric symptoms and failed to respond to treatment. As recent as July 31, 2008, she described symptoms consistent with impaired reality. Claimant's sleep remained disturbed, and her concentration and memory were impaired. On

13

January 9, 2008, it was noted in her medical chart that a schizoaffective disorder was suspected due to the presence of both a thought disturbance and a severe mood disturbance. They opined that Claimant was "unable to be employed at this time in any capacity." (Tr. at 200.)

Claimant also submitted a Medical Assessment of Ability to do Work-Related Activities (Mental) completed by Ms. Martin on May 21, 2008, on which she opined that Claimant had fair to poor abilities in almost all categories. (Tr. at 201-03.) This Assessment is a duplicate of one submitted to the ALJ.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in affording substantial weight to the nonexamining State agency experts. (Pl.'s Br. at 13-18.)

The Commissioner argues that (1) substantial evidence supports the ALJ's decision that Claimant was not disabled because she could perform substantial gainful activity; and (2) the ALJ did not err in relying upon the medical opinions from the State agency medical and psychological sources to assess Claimant's residual functional capacity. (Def.'s Br. at 12-19.)

Claimant first argues that the ALJ erred in adopting the opinion of the State agency medical source in arriving at a physical residual functional capacity finding. Claimant argues

14

that the ALJ adopted the March 13, 2007, opinion of the State agency medical source in arriving at her residual functional capacity finding, but rejected the "opinion of the nonexamining medical expert that the claimant would be mildly limited in reaching in all directions with the left arm (TR 433) to a limitation to reaching overhead with the left arm." (Pl.'s Br. at 14.)  Claimant also argues that the source had not considered all of the information in the record and was unaware of Claimant's MRI on March 2, 2007, and problems related to her rotator cuff. Claimant asserts that aside from the findings of the nonexamining State agency medical source, there is nothing in the record that supports the findings made by the ALJ.  Claimant refers to Dr. Steel's statement that Claimant would be off work for six months from the date of her surgery.  (Pl.'s Br. at 14-15.)

In her decision, the ALJ found that, as assessed by the State agency medical consultant who reviewed the file at the reconsideration level of determination, Claimant was limited to medium work with an ability to stand and/or walk for up to six hours per work day and sit for up to six hours per work day and

> only occasionally reach overhead with the left upper extremity (Id.).  Mentally, consistent with the assessments of the State agency psychological consultants, the undersigned finds that the claimant has the mental residual functional capacity that limits her to work that can be learned in one to two steps that does not require more than occasional interaction with coworkers, no contact with the public, and involves only routine changes in the work environment (Exhibits 7F and 19F).

15

(Tr. at 21.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

While the ALJ was justified in relying on the State agency

16

medical source's opinion about Claimant's residual functional capacity during the period prior to January 2, 2007, the court finds that the ALJ erred in relying on the opinion of the nonexamining State agency medical source in arriving at her residual functional capacity finding thereafter. The State agency medical source who evaluated Claimant's physical impairments did not have the benefit of key medical evidence developed after Claimant injured her shoulder. In particular, the source was unaware of Claimant's MRI completed on March 2, 2007, which showed a large full thickness tear involving the supraspinatus and infraspinatus tendons. (Tr. at 428.) Instead, the source limited Claimant in overhead reaching in all directions[3] based on a mild limitation in her left shoulder, which she believed was a left shoulder contusion. (Tr. at 433, 437.) The source also did not know that Claimant underwent arthroscopic debridement of the glenohumeral joint with arthroscopic subacromial decompression and mini open rotator cuff repair and that Claimant's treating physician indicated that Claimant was disabled from working through at least October of 2007, because of her shoulder injury. (Tr. at 446-47, 544.) Substantial evidence of record supports a finding that from January 2, 2007, Claimant was totally disabled due to her

---

[3] As Claimant points out, the ALJ did not even limit Claimant as opined by the State agency medical source, but instead, found that Claimant was limited to "only occasionally reach[ing] overhead with the left upper extremity." (Tr. at 21.)

shoulder injury and subsequent surgery, as opined by her treating physician, Dr. Steel. From October of 2007, forward, Claimant could not engage in medium work. Instead, she was limited to light work, and, as a result, met the Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.06.

The Commissioner argues that the ALJ recognized in her decision that there was evidence of record subsequent to the State agency medical source's opinion, but that the evidence showed that Claimant healed well from her surgery and had few residual limitations. (Def.'s Br. at 14-15.) The ALJ does note evidence of record after Claimant's surgery in her decision in finding Claimant's shoulder impairment severe (Tr. at 17-18), but she never weighs the evidence of record from Dr. Steel, a treating source, in keeping with the regulations outlined above, to determine the true extent of limitation related to Claimant's shoulder injury. Instead, she relies on the opinion of a State agency medical source who simply did not have all the evidence of record.

A finding of disability as of January 2, 2007, is further supported by the evidence of record related to Claimant's mental condition. Claimant submitted additional evidence to the Appeals Council from Ms. Martin and Dr. Humphreys, which does provide a basis for changing the ALJ's decision. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991) (the court must review the record as a whole, including the new evidence submitted to the Appeals Council,

in order to determine whether the ALJ's decision is supported by substantial evidence). That evidence shows that Claimant failed to respond to treatment in August of 2006, and in July of 2008, Claimant described symptoms consistent with impaired reality. Such evidence suggests that Claimant was more limited from a mental standpoint than as found by the ALJ in her decision.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner in this matter is REVERSED and REMANDED for the purpose of awarding disability insurance benefits effective January 2, 2007, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The court further finds that to the extent Claimant seeks disabled widow's benefits, she has not shown disability as of November 30, 2006, and the Commissioner's decision is AFFIRMED with regard to her application for disabled widow's benefits. Finally, this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 11, 2011

Mary E. Stanley
United States Magistrate Judge